**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

ALVA W. FLEMING,

        Petitioner,

v.                                              Case No. 3:14-cv-1087-J-32MCR

SECRETARY OF THE FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.
_____

**ORDER**

**I. Status**

Petitioner, an inmate of the Florida penal system, initiated this case by filing a pro se Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus (Doc. 1) (Petition) on September 2, 2014. He is proceeding on an Amended Petition (Doc. 19) (Amended Petition), filed November 15, 2016.[1] He challenges a 2009 state court (Duval County) judgment of conviction for trafficking in cocaine and possession of more than twenty grams of cannabis. He is serving a 25-year prison sentence. Respondents contend that the Amended Petition is untimely and the three grounds raised do not relate back to the timely-filed Petition; alternatively, Respondents address the substance of the three claims. See Motion to Dismiss

---

[1] Giving Petitioner the benefit of the mailbox rule, the Court finds the Petition and Amended Petition were filed on the date Petitioner asserts that he handed the documents to prison authorities for mailing to this Court. See Houston v. Lack, 487 U.S. 266, 276 (1988).

or Alternatively Supplemental Answer (Doc. 20) (Motion/Response).[2] Petitioner filed a Reply (Doc. 21) (Reply). The case is ripe for review.[3]

## II. Timeliness of Amended Petition

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) amended 28 U.S.C. § 2244 by adding the following subsection:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the

---

[2] Respondents attached relevant exhibits to the original response (Doc. 12). The Court cites to these exhibits as "Ex."

[3] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th Cir. 2016) (citing Chavez v. Sec'y Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court, and "further factual development" is not necessary. Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

> right has been newly recognized by the Supreme Court
> and made retroactively applicable to cases on collateral
> review; or
>
> (D) the date on which the factual predicate of the claim
> or claims presented could have been discovered
> through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State
> post-conviction or other collateral review with respect to the
> pertinent judgment or claim is pending shall not be counted
> toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Petitioner does not dispute Respondents' calculations that show the original Petition was timely filed, but the Amended Petition was not.[4] The Court has reviewed the calculations and agrees with Respondents' conclusion. Petitioner does not assert any basis for equitable tolling and upon review of the file, the Court finds equitable tolling is not warranted. Petitioner does, however, contend that the claims in the Amended Petition relate back to the claims in the original Petition.

"An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). An amendment to a habeas petition may relate back "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts." Mayle v. Felix, 545 U.S. 644, 664 (2005). A new claim, however, does not meet the

---

[4] Petitioner acknowledged that by the time he sought the Court's leave to file the Amended Petition, the one-year period of limitations had expired. See Doc. 14 at 3 ("[T]he requested amendment will be made well after the statute of limitation[.]").

3

standard and, thus, "does not relate back . . . when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." Id. at 650. The terms "conduct, transaction, or occurrence" are not synonymous with "trial, conviction or sentence." Id. at 664.

In the original Petition, Petitioner alleged that his trial counsel was ineffective for failing to: (1) depose and investigate material witnesses; (2) depose Detective Gonzales to confirm his position on the warrantless traffic stop; (3) object to hearsay statements of D.A. Bishop and obtain the identity of the confidential informant; and (4) suppress or dismiss the information and call certain named witnesses to corroborate his claim. See Petition at 5-10. He indicated that each ground was raised in his state court postconviction motion filed pursuant to Florida Rule of Criminal Procedure 3.850. See id. After reviewing the Respondents' initial response, Petitioner concluded that his claims were insufficiently pled, so he requested permission to file the Amended Petition. See Docs. 14, 15.[5] In his Amended Petition, he raises three grounds: (1) trial counsel was ineffective for failing to investigate and depose witnesses and present a viable defense; (2) trial counsel was ineffective for failing to depose and investigate three witnesses that Petitioner advised counsel to call on his behalf; and (3) the trial court erred by denying his motion for disclosure of the confidential informant's identity and to suppress physical evidence. See Amended Petition at 6-21.

---

[5] In granting Petitioner's request to amend, the Court advised him that it would determine the timeliness and merits of the claims after reviewing the parties' filings. See Order (Doc. 18).

4

When determining whether a claim "relates back" to an earlier pleading,

> [t]he key consideration is that the amended claim arises from the same conduct and occurrences upon which the original claim was based. . . . When the nature of the amended claim supports specifically the original claim, the facts there alleged implicate the original claim, <u>even if the original claim contained insufficient facts to support it</u>. One purpose of an amended claim is to fill in facts missing from the original claim.

Dean v. United States, 278 F.3d 1218, 1222 (11th Cir. 2002) (per curiam) (emphasis added). The Court finds that the first two claims in the Amended Petition alleging ineffective assistance of counsel relate back to the original Petition. Although the claims in the original Petition were not artfully crafted, the Amended Petition "fill[s] in facts missing from the original claim[s]." Id. at 1222.

The third claim in the Amended Petition is a closer call. Petitioner now attempts to raise a claim that the trial court erred by denying his motion for disclosure of the confidential informant's identity and to suppress physical evidence–a claim that he raised on direct appeal. The most similar claims in the original Petition were grounds three and four, where Petitioner argued his counsel was ineffective for failing to obtain the identity of the confidential informant and for failing to suppress or dismiss the information and call certain named witnesses to corroborate his claim–claims he raised in his postconviction proceeding. There can be no real dispute that a claim regarding trial court error is entirely different than a claim alleging ineffective assistance of counsel. Nevertheless, at least part of the new claim regarding the identity of the confidential informant arguably arises from the same

5

common core of operative facts. Given that it is arguable whether this claim relates back to the original Petition, the Court will address it.[6]

### III. Standard of Review

AEDPA governs a state prisoner's federal habeas corpus petition. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

> Under AEDPA, when a state court has adjudicated the petitioner's claim on the merits, a federal court may not grant habeas relief unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. § 2254(d)(2). A state court's factual findings are presumed correct unless rebutted by clear and convincing evidence.[7] Id. § 2254(e)(1); Ferrell v. Hall, 640 F.3d 1199, 1223 (11th Cir. 2011).
>
> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on

---

[6] In the Motion/Response, Respondents substantively address this claim in the alternative.

[7] "This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Pope v. Sec'y for Dep't of Corr., 680 F.3d 1271, 1284 (11th Cir. 2012) (quoting Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003)).

>the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013).

"[A] federal court reviewing the judgment of a state court must first identify the last adjudication on the merits. It does not matter whether that adjudication provided a reasoned opinion because section 2254(d) 'refers only to a decision' and does not 'requir[e] a statement of reasons.'" Wilson v. Warden, Ga. Diagnostic Prison, 834 F.3d 1227, 1235 (11th Cir. 2016), cert. granted, 137 S. Ct. 1203 (2017), (quoting Richter, 562 U.S. at 98). Regardless of whether the last state court provided a reasoned opinion, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99 (citation omitted). When the last adjudication on the merits "'is unaccompanied by an explanation,' a petitioner's burden under section 2254(d) is to 'show[] there was no reasonable basis for the state court to deny relief.'" Wilson, 834 F.3d at 1235 (quoting Richter, 562 U.S. at 98). "'[A] habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded

7

jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the] Court.'" Id. (quoting Richter, 562 U.S. at 102).

> When the reasoning of the state trial court was reasonable, there is necessarily at least one reasonable basis on which the state supreme court could have denied relief and our inquiry ends. In this way, federal courts can use previous opinions as evidence that the relevant state court decision under review is reasonable. But the relevant state court decision for federal habeas review remains the last adjudication on the merits, and federal courts are not limited to assessing the reasoning of the lower court.

Id. at 1239.

### **IV. Ineffective Assistance of Counsel Law**

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003); Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id. at 689. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687.[8]

---

[8] See also Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1284 (11th Cir. 2016) ("'There is a strong presumption that counsel's performance falls within the wide range of professional assistance[;] the defendant bears the burden of proving that counsel's

8

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687.

Richter, 562 U.S. at 104; Marshall, 828 F.3d at 1284 (recognizing that to proceed on a claim of ineffective assistance of trial counsel, "the petitioner has to show both that his counsel's performance was deficient and that that deficient performance was prejudicial—that is, that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" (quoting Strickland, 466 U.S. at 687, 694)). Since both prongs of the two-part Strickland "test must be satisfied to show a Sixth Amendment violation, a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010) (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)).

"'The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.'" Marshall, 828 F.3d at 1285 (quoting Overstreet v. Warden, 811 F.3d 1283, 1287 (11th Cir. 2016)).

> "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any

---

representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy.'" (quoting Kimmelman v. Morrison, 477 U.S. 365, 381 (1986)).

> reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, 562 U.S. at 86.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014); <u>see</u> <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009).

### V. Analysis

**A. Ground One**

Petitioner alleges that his trial counsel was ineffective for failing to investigate and depose witnesses and present a viable defense. <u>See</u> Amended Petition at 6-9. He argues that his counsel should have contacted Enterprise Rental Car (Enterprise) to clarify the timeline of events leading to Petitioner's arrest, and if counsel had done so, he would have discovered that law enforcement used the inventory search as an unlawful investigatory search. <u>Id.</u> at 6-7. He claims that he raised this ground in his Rule 3.850 motion. <u>Id.</u> at 10.

In reviewing Petitioner's Rule 3.850 motion, this Court does not find any reference to Enterprise. <u>See</u> Ex. Y at 1-9. However, in an amended motion filed pursuant to Rule 3.850, Petitioner argued that his counsel was ineffective for failing to contact Enterprise to clarify the timeline of events–the same claim he now presents in this Court. <u>See</u> Ex. Y at 26.[9]

---

[9] The amended Rule 3.850 motion filed by Petitioner appears to relate to a different case, possibly even a different defendant. The motion states that Petitioner's counsel, John M. Merritt and Noel Lawrence, were ineffective, <u>see</u> Ex. Y at 25, 31, but Petitioner was represented at trial by Sandra Young, Esquire, <u>see</u> Ex. D at 2. Additionally, there was testimony at the trial that the truck was not registered in Petitioner's name and that Petitioner did not own the truck, but not that it was rented from Enterprise. <u>See</u> Ex. D at 97, 116. Indeed, Petitioner argued in his initial Rule 3.850 motion that the truck was owned by Cathy Fleming. <u>See</u> Ex. Y at 7.

In the order denying Petitioner's claims under Rule 3.850, the state court recognized that Petitioner filed an initial motion and an amended motion. Ex. Y at 34. The court stated that it would consider the claims raised in Petitioner's amended Rule 3.850 motion only to the extent such claims related back "to those issues raised in the timely filed Motion." Id. (citing Richardson v. State, 890 So. 2d 1197, 1198 (Fla. 5th DCA 2005)).[10] The state court did not address the arguments in the amended motion regarding Enterprise; apparently, the court found the claim to be untimely. See id. at 34-38. In fact, Petitioner agrees that the state court found the claim to be untimely. See Doc. 14 at 6 ("Thus, essentially, the postconviction court found Petitioner's new claims . . . to be untimely."). The state court's decision finding Petitioner's claim untimely, though not clearly expressed, rests on an independent and adequate state procedural ground, and the First District Court of Appeal (DCA) per curiam affirmed the state trial court's decision without issuing a written opinion. Ex. Z. Thus, this claim is procedurally defaulted.

"A state prisoner may overcome the prohibition on reviewing procedurally defaulted claims if he can show 'cause' to excuse his failure to comply with the state procedural rule and 'actual prejudice resulting from the alleged constitutional violation.'" Davila v. Davis, 137 S. Ct. 2058, 2064-65 (2017) (citing Wainwright v. Sykes, 433 U.S. 72, 84 (1977); Coleman v. Thompson, 501 U.S. 722, 750 (1991)). To show cause for a procedural default, "the petitioner must demonstrate 'some objective factor external to the defense' that impeded his

---

[10] A Rule 3.850 motion must be filed no later than two years after the judgment and sentence become final, unless an exception applies. Fla. R. Crim. P. 3.850(b). In Richardson, 890 So. 2d at 1198, the Fifth DCA upheld a trial court's decision summarily denying a petitioner leave to amend his Rule 3.850 motion, because the petitioner sought to add new substantive grounds for relief after the two-year limitations period had expired.

11

effort to raise the claim properly in state court." Ward, 592 F.3d at 1157 (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)).[11] "[T]o show prejudice, a petitioner must demonstrate that 'the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness.'" Id. (quoting McCoy v. Newsome, 953 F.2d 1252, 1261 (11th Cir. 1992) (per curiam)).

Even if a petitioner cannot show cause and prejudice, a court may review a procedurally defaulted claim if the petitioner can show that a fundamental miscarriage of justice would otherwise result. See id.

---

[11] Generally, neither negligence nor ineffective assistance on the part of a prisoner's postconviction attorney qualifies as cause to excuse a procedural default. See Davila, 137 S. Ct. at 2065; Maples v. Thomas, 565 U.S. 266, 280 (2012). However, in Martinez v. Ryan, 566 U.S. 1, 14 (2012),

> [t]he U.S. Supreme Court enunciated a narrow exception to the general rule that the lack of an attorney or attorney error in state post-conviction proceedings does not establish cause to excuse the procedural default of a substantive claim. The Supreme Court, however, set strict parameters on the application of this exception. It applies only where (1) state law requires a prisoner to raise ineffective-trial-counsel claims during an initial collateral proceeding and precludes those claims during direct appeal; (2) the prisoner failed to properly raise ineffective-trial-counsel claims during the initial collateral proceeding; (3) the prisoner either did not have counsel or his counsel was ineffective during those initial state collateral proceedings; and (4) failing to excuse the prisoner's procedural default would result in the loss of a "substantial" ineffective-trial-counsel claim. The Supreme Court later extended Martinez's rule to cases where state procedures, as a practical matter, make it "virtually impossible" to actually raise ineffective-trial-counsel claims on direct appeal. Trevino, 569 U.S. at - - - , 133 S.Ct. at 1918-21.

Lambrix v. Sec'y, Fla. Dep't of Corr., 851 F.3d 1158, 1164 (11th Cir. 2017) (some citations omitted).

> [I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default. This exception is exceedingly narrow in scope, however, and requires proof of actual innocence, not just legal innocence.

Id. (quotations and citations omitted).

Petitioner has not shown both cause excusing the default and actual prejudice resulting from the bar. Neither has he met the Martinez standard, as he has not shown that failing to excuse the default would result in the loss of a "substantial" claim. See supra n. 9. Finally, he has not shown that he is entitled to the fundamental miscarriage of justice exception. Petitioner is not entitled to federal habeas relief on ground one.

### B. Ground Two

Petitioner contends that his trial counsel was ineffective for failing to depose and investigate three witnesses that Petitioner advised counsel to call on his behalf. See Amended Petition at 11-13. He argues that these witnesses would have "changed the outcome of the proceeding by casting light on the timing of the event" and the inconsistencies in the testimony of the law enforcement officers. Id. at 12. He acknowledges that he raised this claim in his Rule 3.850 motion in state court. Id. at 14. Respondents argue that this claim is insufficiently pled, and Petitioner agrees. See Reply at 4 ("Petitioner concedes that this claim is insufficient and cannot be correct because he has lost the witnesses names."). While this could be construed as an abandonment of this claim, in an abundance of caution, the Court will address it. See generally Clisby v. Jones, 960 F.3d 925, 936 (11th Cir. 1992).

To the extent Petitioner is raising the same ground he raised in his Rule 3.850 motion, the claim is without merit. Petitioner argued in his Rule 3.850 motion that counsel should have called Cathy Fleming, the owner of the truck that Petitioner was driving, and Derick Byrd, the individual who possessed the truck prior to Petitioner picking it up. Ex. Y at 7. In addressing this claim, the state trial court found:

> In Ground Four, the Defendant argues that his attorney was ineffective for failure to call certain named witnesses that would have corroborated the Defendant's claim that the illegal drugs were in the borrowed vehicle without his knowledge when it came into his possession. . . . Here, the Defendant proffers corroborating testimony that he was not the owner of the vehicle and had no knowledge of the presence of drugs in the vehicle. Both facts were asserted repeatedly by his attorney during his trial. However, two detectives testified that, during questioning, the Defendant claimed he was transporting the drugs to a mechanic to exchange for repairs on his vehicle. Also, during questioning, the Defendant acknowledged the vehicle in which he was arrested was "his" truck. Given these self-incriminating statements, the Defendant has failed to demonstrate how the omission of the witness[es]'s testimony prejudiced him to the degree that a different outcome in the proceedings was reasonably probable. Relief is denied.

Id. at 37 (citations omitted). Petitioner appealed, and the First DCA per curiam affirmed the trial court's decision without issuing a written decision. Ex. Z. Therefore, there is a qualifying state court decision under AEDPA. Upon a thorough review of the record, this Court finds that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Petitioner is not entitled to relief on the basis of this claim.

### C. Ground Three

Petitioner argues that the trial court erred in denying his motion for disclosure of the confidential informant's identity and to suppress physical evidence. See Amended Petition at 15-21. The state trial court held hearings on Petitioner's motions prior to trial. Ex. C at 330-77, 381-98, 402-21. After hearing testimony from two police officers who were involved in Petitioner's arrest, the parties presented the following arguments regarding the motion to compel the identity of the confidential informant:

> [DEFENSE COUNSEL]: . . . [T]he defense's perspective of the facts offered are just these: That but this confidential informant telling Detective Hughey on the date in question, the same date of this stop and plan to stop Mr. Fleming, that large quantities of drugs would be in Mr. Fleming's truck, the confidential informant had to know something about it intimately, be intimately familiar to provide such information on such short notice with Mr. Fleming.
>
> Detective Hughey wasn't able to tell me during deposition, nor was he able to tell me today how that informant came up with that information, and, of course, my assertion is that the informant may have had some direct tie to planting this, especially in light of the fact that the informant gets paid. He gets paid money, and Detective - - he knows that Detective Hughey would use his information and the amount of drugs to determine how much money he would get paid. And the defense's perspective would be that, you know, I don't know whether this informant was out of money and needed money and set Mr. Fleming up for that matter.
>
> I believe that the case law speaks specifically to a fair determination and having information that may be used in the fair determination of the cause at issue.
>
> THE COURT: Well, let me ask you this. Even if I authorize you to put thumbscrews on him, what are the chances that the confidential informant is going to say, I planted the dope because I needed $100?

[DEFENSE COUNSEL]: He may not say that, sir, but I would hope that my ability to get him some - - to say something that may be useful in the case would come out of a deposition or questioning of this particular informant. I don't necessarily state that I could get him to say that, but it may be that I could get him to state something.

THE COURT: Well, it doesn't bear on the issue before me but, you know, having practiced law for quite a[]while I think that empty chair is probably more valuable to you, but that's just my opinion.

[DEFENSE COUNSEL]: It may be, sir, but just in light of the fact that this is a very serious case with very serious consequences of which this confidential informant obviously by Detective Hughey's testimony has worked for him four to five years, provided information, got paid for that information, thus may be in the business, as far as I'm concerned, of setting individuals up to get paid, just to get paid. That would be my assertion, and that I believe is enough.

THE COURT: Well, you raise an interesting point that I hadn't considered before, but that being, you know, it's a possibility that - - what had occurred to me is the possibility that the confidential informant is a supplier or customer. That he may be in the business of doing this with another, and commendably a creative idea, which I'm not saying ain't true. I don't know.

. . . .

[THE STATE]: . . . Were this a crime of sale I would certainly agree that that defense is available to the defendant and then that argument would be applicable, but this is a crime of possession trafficking and all of the elements of the crime were committed in front of the law enforcement officers that the State intends to call at trial.

We don't intend to call the informant. The confidential informant was not a witness of the crime charged, which is the possession, that the defendant, per the officers' testimony, admitted to knowledge of the drugs, so the fact that it was a setup - -

> THE COURT: Right, the crime, the crime is possession of X amount of narcotics while sitting on the side of I-95 on a certain date at a certain time of day.
>
> [THE STATE]: Yes, Your Honor, and that would be my argument, is that even if there was a setup, as defense argued, and it's a possibility I would concede, that the defendant had knowledge of that. So therefore the crime was still committed and the CI was not a witness to this crime that we've charged.
>
> . . . .
>
> [DEFENSE COUNSEL]: Well, you know, just as sale has an affirmative defense of entrapment, I'm just not sure where I can go with it but, and thus that's why I say "may bring up an affirmative defense," because even though the allegations at this - - as they are allegations at this point is that Mr. Fleming was in possession of drugs, if this individual, and I assert that he was instrumentally involved with the State or an instrumental arm of the State and that he did set Mr. Fleming up, then there might be an affirmative defense that comes out of that, and I think that may be huge.
>
> [THE COURT]: All right. Well, let me tell you this, I do not find that the evidence that I have received so far establishes a predicate for disclosure of the confidential informant on that basis. . . . [W]hat I find today though is that the confidential informant was not a witness to the charged offense. I don't find that the identity is relevant or helpful to the accused or that it is essential to a fair determination of the cause at issue.
>
> I further find, based on Detective Hughey's testimony that, even absent a traffic stop, based on his recognition of and testimony regarding the previous reliability of the confidential informant that Detective Hughey had probable cause to stop and search the vehicle, regardless of any traffic offense that he might have observed. For those reasons the motion is denied.

Ex. C at 363-69. The state court later heard additional testimony from another police officer involved in Petitioner's arrest and argument from counsel on the motion to suppress physical

17

evidence and statements. See id. at 381-98, 402-21. The state court denied the motion to suppress. See id. at 420-21.

After he was convicted, Petitioner, through counsel, filed a direct appeal in which he argued that the trial court erred in denying the motion for disclosure of the confidential informant's identity and to suppress physical evidence. Ex. H. The State filed an answer brief on the merits. Ex. I. The First DCA per curiam affirmed Petitioner's judgment of conviction without issuing a written opinion. Ex. J.

Respondents argue that the First DCA's decision is entitled to deference under AEDPA, and this Court agrees. Upon a thorough review of the record, the Court finds that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Accordingly, it is

**ORDERED**:

1. The Amended Petition (Doc. 19) is **DENIED** and this case is **DISMISSED with prejudice**.

2. The Clerk shall enter judgment dismissing this case with prejudice and close the file.

3. If Petitioner appeals this Order, the Court denies a certificate of appealability.[12]

Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 5th day of September, 2017.

TIMOTHY J. CORRIGAN
United States District Judge

JAX-3 8/31
c:
Alva W. Fleming, #278259
Counsel of Record

---

[12] This Court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), "or that the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (quoting Slack, 529 U.S. at 484). "Where a district court has rejected the constitutional claims on the merits, . . . [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. After consideration of the record as a whole, the Court will deny a certificate of appealability.